IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-HC-2037-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | FINDINGS OF FACT |
| | ) | AND CONCLUSIONS OF LAW |
| PATRICK CAPORALE, | ) | |
| Respondent. | ) | |

Petitioner (the government) instituted this civil action pursuant to Title 18 of the United States Code, Section 4248(a), seeking to commit Respondent Patrick Caporale (Respondent or Mr. Caporale) as a "sexually dangerous person" pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("the Act"). The government filed a certificate stating that mental health personnel for the Federal Bureau of Prisons (BOP) examined Respondent and issued a preliminary determination that he is sexually dangerous within the meaning of the Act [DE 1]. Such certificate stayed Respondent's release from federal custody pending a hearing to determine whether Respondent qualifies for commitment as a sexually dangerous person. The government's petition was filed on March 21, 2008, along with a request for leave to file the certification *nunc pro tunc*; Respondent's projected release date was March 20, 2008. The government later contended that the release date had been miscalculated and that Respondent's actual release date was March 21, 2008. The Court entered an order on April 8, 2008, finding moot the government's motion for leave to file based on its assertion that Respondent's release date had originally been miscalculated.

On March 5, 2012, the Court conducted an evidentiary hearing in this matter pursuant to 18 U.S.C. § 4247(d). On March 5, 2012, the Court directed the parties to file proposed findings of fact and conclusions of law. Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, and after due consideration of the evidence presented and argument of counsel, the Court *adopts* the following portions of Respondent's Findings of Fact and Conclusions of Law (Findings), as filed on March 29, 2012 [DE 73], and incorporates those portions as if they were fully set forth herein: sections II (Facts)[1], III (Expert's Qualifications), V (Findings), VI (Dangerousness and Risk Assessment), and VII (Supervised Release). The Court declines to adopt Respondent's proposed conclusions regarding violations of equal protection and due process as set forth in section VIII insofar as they are inconsistent with the Fourth Circuit's recent holding in *United States v. Timms*, 664 F.3d 436 (4th Cir. 2012). The Court now holds that the government has failed to satisfy its burden to show by clear and convincing evidence that Respondent is sexually dangerous to others as defined by the Adam Walsh Act.

## DISCUSSION

To order the commitment of a respondent pursuant to § 4248, a court must conclude, after an evidentiary hearing at which the government bears the burden of proof by clear and convincing evidence, that the respondent is a "sexually dangerous person" as defined by the Act. The government must show that (1) the respondent "has engaged in or attempted to engage in sexually violent conduct or child molestation" and (2) that the respondent "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in

---

[1] Except insofar as paragraph E is inconsistent with the Court's prior holding entered on April 8, 2008.

2

refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4248(d). "[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (internal quotation marks, citations, and alterations omitted); *see also Addington v. Texas*, 441 U.S. 418, 423-24 (1979) (noting that the "clear and convincing" standard of proof is an "intermediate standard" that falls between a "mere preponderance of the evidence" and "beyond a reasonable doubt"). If the court finds that the government has satisfied its burden, the individual must be committed to a suitable facility for mental treatment until he is determined to no longer be sexually dangerous to others. 18 U.S.C. § 4248(d).

**1. *Whether Respondent has engaged or attempted to engage in sexually violent conduct or child molestation***

The Court finds that the government has established by clear and convincing evidence that Mr. Caporale has engaged or attempted to engage in sexually violent conduct or child molestation in the past. Mr. Caporale does not contest such a finding.

**2. *Whether Respondent currently suffers from a serious mental illness, abnormality, or disorder***

None of the experts who testified in this matter could agree as to a precise diagnosis of Mr. Caporale. Dr. Gary Zinik, one of the government's experts, opined that Mr. Caporale currently suffers from paraphilia not otherwise specified ("NOS"), hebephilia, sexually attracted to boys, nonexclusive type. Pet'r Ex. 2. Dr. Lela Demby, the government's second expert,

3

opined that Mr. Caporale currently suffers from pedophilia, sexually attracted to males, exclusive type and personality disorder not otherwise specified ("NOS") with dependent traits. Pet'r Ex. 6. Respondent's expert, Dr. Joseph Plaud, opined that Mr. Caporale does not meet the diagnostic criteria for any paraphilia. Resp't Ex. 1.

*Pedophilia*

According to the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* ("DSM-IV-TR"), pedophilia involves recurrent, intense, sexual urges, fantasies, or behaviors involving pre-pubescent minors, generally age thirteen or younger. DSM-IV-TR at 570-71. Pubescence is defined as the approach of the age of puberty or sexual maturity. STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006). Puberty is defined as the sequence of events by which a child becomes a young adult, including the development of secondary sexual characteristics. *Id.* The DSM-IV-TR lists pedophilia within the diagnostic class of sexual disorders or paraphilias.

Dr. Demby bases her diagnosis of pedophilia in this case at least in part on Mr. Caporale's own statements made in 1985 that he had always liked boys approximately twelve years old and that he was a pedophile. Pet'r Ex. 5 at 12. Dr. Zinik's report notes, however, the importance of distinguishing between attraction to pre-pubescent minors and attraction to pubescent minors, irrespective of the numerical age of the victims. Indeed, although the DMS-IV-TR provides a reference age of thirteen or younger in its diagnostic criteria of pedophilia, many eleven, twelve, and thirteen year olds have reached pubescence. Pet'r Ex. 2 at 14. Dr. Zinik found Mr. Caporale's sexual preference to be pubescent boys. Dr. Plaud found Mr. Caporale's sexual interest to lie in post-pubescents. Resp't Ex. 1 at 10. The Court is persuaded

by the findings of Drs. Zinik and Plaud that the record does not support a diagnosis of pedophilia because, although Mr. Caporale has an admitted preference for twelve year old boys, the evidence suggests that Mr. Caporale's sexual preference is in minors who have reached pubescence or post-pubescence, not in pre-pubescent minors. *See* Pet'r Ex. 2 at 14. Accordingly, the Courts finds that the government has failed to show by clear and convincing evidence that Mr. Caporale currently suffers from pedophilia.

*Paraphilia NOS, hebephilia*

The DSM-IV-TR also provides for a diagnosis of paraphilia not otherwise specified, or paraphilia NOS. Paraphilia NOS has been described as a "catch-all" diagnostic category, provided to be applied to paraphilias that do not meet the criteria for any specified categories, such as less frequently observed paraphilias including telephone scatalogia, necrophilia, and zoophilia. Resp't Ex. 1 at 10; DSM-IV-TR at 567, 576. The DSM-IV-TR entry for paraphilia NOS contains none of its own diagnostic criteria. Hebephilia involves sexual attraction to pubescent and post-pubescent minors. Pet'r Ex. 2 at 13; Resp't Ex. 1 at 10. Hebephilia is not listed as an accepted mental disorder in the DSM-IV-TR. Although hebephilia has been proposed to be included as a mental disorder in the revision of the DSM, it has been rejected as a proper mental disorder by numerous psychologists.

As discussed in Respondent's Findings, noted mental health professionals have opined that sexual arousal to pubescent and post-pubescent minors is not an inherently deviant sexual interest, albeit one that, in this country, if acted on might violate the law. Resp't Findings at 12 n.2. The Court finds persuasive the testimony of Dr. Plaud on this issue, who states in his report that "[i]f one were to attempt a clinical diagnosis of deviant sexual interest in pubescent/post-

5

pubescent[s] . . ., termed by some psychologists as 'paraphilia NOS hebephilia/ephebophilia,' this is an invalid diagnosis." Resp't Ex. 1 at 10. Given that the characterization of hebephilia is a contested issue in the mental health community, the Court finds that it would be inappropriate to predicate civil commitment on a diagnosis that a large number of clinical psychologists believe is not a diagnosis at all, at least for forensic purposes.

Accordingly, the Court finds in this matter that a diagnosis of paraphilia NOS, hebephilia is not an appropriate basis for civil commitment under the Act, and that the government has therefore failed to meet its burden on this issue.

*Personality Disorder NOS*

A personality disorder is "an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture." DSM-IV-TR at 689. Dr. Demby's report indicates that her diagnosis of personality disorder NOS with dependent traits is provisional. It is based on a 1981 psychological evaluation that included a diagnosis of dependent personality disorder. Dependent personality disorder "reflects a pervasive and excessive need to be taken care of that leads to submissive and clinging behavior and fears of separation." Pet'r Ex. 5 at 13. Although the Court does not comment as to whether a diagnosis of dependent personality disorder could ever be considered a serious mental disorder, in light of the nature of the disorder, Dr. Demby's application of the diagnosis only provisionally, and the lack of testimonial evidence on this issue, the Court finds that the government has not shown by clear and convincing evidence that Mr. Caporale's diagnosis of personality disorder NOS with dependent traits is a serious mental disorder under the Act.

In light of its finding that the weight of the evidence does not support a diagnosis of

pedophilia and that paraphilia NOS, hebephilia is not an accepted mental disorder that constitutes an appropriate basis upon which to predicate civil commitment, the Court finds more credible the testimony of Dr. Plaud, who opined in this matter that Mr. Caporale currently suffers from no sexual disorder.

Further, the Court finds that personality disorder NOS with dependent traits is not, standing alone as in this instance, a mental illness, abnormality, or disorder sufficiently serious to satisfy the government's burden on this issue. Accordingly, the Court finds that the government has failed to show by clear and convincing evidence that Mr. Caporale currently suffers from a serious mental illness, abnormality, or disorder as required by the Act.

### *3. Whether, as a result of the illness, abnormality, or disorder, the Respondent would have serious difficulty in refraining from sexually violent conduct or child molestation if released*

Even if this Court were to credit the government's assertion that Mr. Caporale suffers from paraphilia NOS, hebephilia and such diagnosis could appropriately be considered a serious mental illness, the government has still failed to meet its burden to show that Mr. Caporale would have serious difficulty in refraining from sexually violent conduct or child molestation if released. As noted by the Fourth Circuit in *United States v. Hall*,

> [t]he 'serious difficulty' prong of § 4248's certification proceeding refers to the degree of the person's "volitional impairment," which impacts the person's ability to refrain from acting upon his deviant sexual interests. *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (noting that statutory requirements that couple proof of dangerousness with proof of a mental illness or abnormality "serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control"); *id.* at 357 (noting that civil commitment statutes may "provide[] for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety...provided the confinement takes place pursuant to proper procedures and evidentiary standards") (internal citations omitted); *see also Kansas v. Crane*, 534 U.S. 407, 414 (2002) (noting that "our cases suggest that civil

commitment of dangerous sexual offenders will normally involve individuals who find it particularly difficult to control their behavior.")

*United States v. Hall*, 664 F.3d 456, 463 (4th Cir. 2012).

Each of the testifying experts relied, to a greater or lesser degree, on actuarial instruments. These instruments include the Static 99-R, the Static 2002-R, the MnSOST-R, and MATS-1, and the Court adopts the Respondent's Findings as to the results of these actuarial assessments and the testimony regarding the application of these assessments by each expert. After considering the testimony and the reports of the experts in this case, the Court finds more credible the opinion of Dr. Plaud with regard to this step of the inquiry.

Dr. Plaud relied on the effects of Mr. Caporale's age, now fifty-nine, on his ability to control his sexual impulses; statistically, recidivism rates of sexual offenses decrease as offenders age. Resp't Ex. 1 at 2. Dr. Plaud also relied on the fact that Mr. Caporale has not had a contact offense in roughly two decades. Dr. Plaud testified that Mr. Caporale's evolution from a contact sex offender to one who only possesses written materials and visual depictions of pornography is evidence of Mr. Caporale's ability to control his impulses. Indeed, the instant offense conduct for which Mr. Caporale was serving a custodial sentence at the time of his certification was for possession of hundreds of photos, only three of which were determined by the United States probation officer to be of minors clearly under the age of sixteen. Dr. Plaud also noted the fact that Mr. Caporale has not had any infractions in the BOP since May 2011 as further evidence that Mr. Caporale has the ability to control his sexual impulses. Finally, Dr. Plaud highlighted the importance of distinguishing between "those men who commit sexual criminal behavior because of evidence of ongoing sexual impulse control versus other reasons that are not based on sexual

8

impulse control difficulties, but are rather opportunistic illegal acts, as is the case here." Resp't Ex. 1 at 2.

> [I]n cases where lack of control is at issue, the 'inability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Kansas v. Crane*, 534 U.S. 407, 413 (2002).

Furthermore, Mr. Caporale will serve a three year term of supervised release upon his release from BOP custody. Mr. Caporale will be required to participate in a metal health program and is forbidden from being in the company of any minor, male or female, unless in the company of adult relations or after being given written permission by his probation officer. Resp't Findings at 6. Lauretta Glatz testified at the hearing that she and her husband will allow Mr. Caporale to live with them upon his release. They have no minor children, and this living arrangement has been approved by a probation officer in New York. Testimony by Donald Zarnfaller was proffered at the hearing to show that Mr. Caporale will also have a job upon his release in an auto parts store. While such evidence does not affect the Court's consideration of Mr. Caporale's volitional control, it does inform the Court's decision insofar as it tends to show that upon Mr. Caporale's release from custody he will have a system in place that might provide additional support for his own ability to control his sexual impulses.

This final step of the inquiry, focused as it is on future behavior, must appropriately take into account the *current* status of the respondent. The Court finds persuasive the testimony of Dr. Plaud who concluded that, having considered Mr. Caporale in light of his sexual offense and

9

psychosocial histories, *current* evidence regarding sexual deviance, and his *current* age, Mr. Caporale would not have serious difficulty in refraining from sexually violent conduct or child molestation if released.

Accordingly, though it finds that the government has met its burden at step one, and even if it assumes, *arguendo*, that the government has met its burden at step two of the inquiry, the Court finds that the government has failed to show by clear and convincing evidence that Mr. Caporale would have serious difficulty in refraining from sexually violent conduct or child molestation if released. The government has not met its burden, therefore, to show that Mr. Caporale is sexually dangerous to others as defined by the Adam Walsh Act.

## CONCLUSION

Accordingly, the Clerk is DIRECTED to enter judgment in favor of the Respondent Patrick Caporale and against the Petitioner. The government is ORDERED to release the Respondent to the custody of the appropriate United States Probation Office.

Petitioner's objection to Dr. Plaud's testimony under *Daubert* was overruled at the evidentiary hearing and Petitioner's Motion in Limine [DE 56] is DENIED AS MOOT. Petitioner's Motion for Video-Conference Testimony [DE 66] is also DENIED AS MOOT. This action is hereby DISMISSED.

SO ORDERED, this /9 day of April, 2012.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE